Case number 23-3064. United States of America v. Lloyd Casimir Cruz, Jr. Appellants. Mr. Roots for the appellants. Mr. Lieberman for the appellate. Morning, counsel. Good morning. Mr. Roots, please proceed when you're ready. Good morning. Thank you, your honor. May it please this honorable court, my name is Roger Roots and I represent the appellant in this matter, Mr. Lloyd Cruz. Mr. Cruz is, of course, one of the January 6th defendants and he is here today to challenge what we believe is the largest search warrant in American history, perhaps world history, in terms of its scope and its scale. I should say this was a set of search warrants. We argue these were general warrants, but these were the warrants that the FBI and the D.C. Capitol Police used to essentially identify and track every single cell phone inside the U.S. Capitol on January 6, 2021. We argue this is a general warrant and that this was the largest warrant in world history, and if anyone knows of a larger one in terms of its scope and scale, I'd love to hear about it. This warrant did not even identify the specific crimes to attach to specific suspects, certainly didn't name Mr. Cruz at all, didn't identify what crimes he might have been suspected of committing or any other January 6th, for that matter. This warrant, unlike any warrant I've ever seen, had a menu of possible crimes, I think 11 possible crimes, that the writer of the warrant and ultimately the magistrate that approved it listed as possible crimes that the possessors of the cell phones either committed or witnessed. So the scope and scale of this search warrant is absolutely unprecedented in American history. And, you know, in our briefing, we compare this to the warrants that triggered the creation of Fourth Amendment, and those were the John Wilkes warrant, which was one of the most notorious warrants in world history, and that was a warrant in which the King of England and the ministers of the King essentially wrote a warrant that said, go out and find whoever wrote this particular anti-government pamphlet that criticized the King of England. Mr. Ruth, I have just a really preliminary question for you, which is, I understand that Mr. Cruz stipulated to certain facts, and when he did that, did he, I don't see it in the record, but did he preserve his Fourth Amendment, his right to challenge the Fourth Amendment suppression motions denial? Absolutely, yes. We made it a major part of our litigation in this case. We stipulated Mr. Cruz was there, he was at the Capitol, etc. But we had discussions with the U.S. Attorney's Office, we indicated we wanted to challenge this search warrant, and, you know, we were not plead guilty, but, you know, we would stipulate Mr. Cruz, you know, certainly was inside the Capitol and, you know, committed the offense. But we argued that the warrant should have been struck down and suppressed, and the case should have gone away even before it got to trial. Is there somewhere in the record I can look to see that that was preserved? Well, that's a good question. I think the stipulation itself, didn't speak to that as I read it. Let's put it this way. I believe when we were, the option was either pleading guilty, pleading guilty and preserving that issue or having the stipulation. So we deliberately preserved that issue. Otherwise, we would have just, you know, like so many others, taken, you know, probably advised a guilty plea. And I would say this warrant, by any test ever laid out by the Supreme Court, probably any court as far as I know, by any test, this warrant is a general warrant, in that it did not accuse a particular individual of committing a particular crime. It did not specify particular houses, papers or effects to be searched. Well, in that respect, it seems like it's more narrow than perhaps you're characterizing it, in the sense that often there is a warrant, for example, to search a place. It doesn't have to identify a person where there's, you know, the notion that there's going to be evidence of crime. If you think of the location history information here, like files, like a giant file room, if the police say to the custodian of a file room, we'd like to subpoena, here's a warrant, we'd like to subpoena a record that shows whether the defendant, you know, the record in file cabinet 67 that shows that the defendant was present at the scene of the murder in Philadelphia on the night in question, even though, you know, walking around without any object and looking for whatever crimes might be manifest in that file room might tend to be more like a general warrant. When the, when the warrant itself is focusing much more narrowly here on a place and on a finite period of time, how do you square that with your argument that this is effectively an ultra-broad warrant or a general warrant? Well, I would say that that argument, it would be used by the government to get around the obvious generality of this warrant. So these warrants were issued to service providers, Google, Verizon, AT&T, etc. And, you know, think of how the government could work around the requirements of the Fourth Amendment just by giving service providers orders to give, to cough up, I mean, think about newspaper subscriptions, think about, there are many service providers. But here there is certainly probable cause that offenses were committed at the Capitol, including on behalf of everybody for whom the geolocation data was sought, the unauthorized presence in a restricted building on grounds. And where that, there's probable cause to believe that all the people on whom information was sought were in fact in violation of the law. It seems quite different from what you're describing. And I take it that the Fifth Circuit has said, well, we don't look at the object as framed by the warrant. We look at the capacity of the entire database. But that's why I'm probing the analogy to a giant information warehouse where subpoenaing a subset of information isn't invalidated by the fact that it's embedded in a much larger library of information. And so I'm just trying to get a handle on which, why that seems irrelevant to you, that the warrant was in fact quite focused to a limited period of time and a limited space. Well, I guess I would actually quibble that everyone who was inside the Capitol during those hours of January 6, 2021 was by definition committing a crime. I would quibble with that. And in fact, the government, I believe, quibbles with that. There are, I believe I've heard that there were 80 journalists who followed the crowd, something like 80 journalists. The government has only prosecuted a very small number, maybe five of those. And they tended to be journalists on the right. And the journalists on the left were able to do and follow the crowd into the Capitol without prosecution. I don't have any reason to think that they weren't also, unless they had authorization to be there, some kind of press credential to go inside. If they were unauthorized at a time when the building and grounds were closed, then it seems like that's at least prima facie evidence that would support probable cause that all of those people were in a restricted building or grounds without authorization to be there. But my question is sort of more fundamental. Under Carpenter, isn't what we're supposed to look at the scope of what the government is seeking, not the scope of all the information in which what they're seeking may be embedded? Well, again, I would go back to the idea that these are service providers. So we have many service providers, the milk man who delivers milk. Can the government get around the limitations of the Fourth Amendment just by ordering the milkman to essentially carry out its search functions? But it's not invoking the blanket authority of a service provider and just saying, hey, AT&T, if you have any information about any crime that was committed anywhere, can you help us do it? It's actually taking a service provider who has useful information but targeting the service provider's information on a particular point in time, at a particular place, in a particular time window, at which there's probable cause to believe that there were a lot of law violations going on. And it may be true that not every single person there was violating the law, but the question is whether there's probable cause. And there's probable cause to believe that at that point in time, at that place, in that time window, there was probable cause to believe offenses were being committed. And it's targeted around that factual compass, not everything that that service provider happens to know. Yeah, so there's several things here. First of all, the government, I think your honors are both focusing on the idea of entry and remaining in a restricted area or just trespassing. I think most of us could concede that was a very common offense on January 6th. The government actually listed 11 offenses, including murder, including assaults of officers, and not any of that was tied with particularity, as required by the Fourth Amendment, to any individual, either named or unnamed. Again, why does it matter? It's not an arrest warrant. It's a search warrant. And they had reason to believe, based on the surveillance information, based on testimony of witnesses who had been there that assaults were committed, that some people did die. So there was information about, I would say, most of the offenses listed. But even if there wasn't, as long as there's one offense listed as to which the warrant is based on probable cause, does it matter? Is there any precedent that we should look at that shows that the including of superfluous offenses would render an otherwise valid warrant defective? There is precedent. I point to the Ybarra versus Illinois case, Supreme Court decision, where cops entered a bar looking for drug dealers and patted down every single person in the bar. And of course, they were correct. They found a drug dealer in the bar. And so there was a guilty offender, at least one. Patting you down, you have a reasonable expectation of privacy in your, I mean, I'm assuming that the issue there is whether you have a reasonable expectation of privacy in what's under your clothing. Here, you don't dispute that Cruz lacked a reasonable expectation of privacy in his presence in the Capitol, which is a government building closed to the public. It was under full camera surveillance. Lawful entry requires identification and security screening to enter. There's no reasonable expectation of privacy when someone is inside the Capitol, that they are there, is there? Well, I would direct this court to the Supreme Court's ruling in the Jones case. Now, the Jones case was that Supreme Court decision where- I'm well aware of it, yeah. The GPS tracker on cars. The government was arguing in that case, hey, we can put a GPS tracker without warrant on any car. They're out in the public. There's no reasonable right to privacy out in the public. Cars are everywhere. They're seen by the public. And as I recall the story of the oral argument there, one of the Supreme Court justices, I forget which one, asked the Solicitor General, does that mean you can put one on my car without a warrant? They said, yes. Supreme Court unanimously said, no, this goes beyond the pale. This is too much. This is the all-seeing eye of the state thinking that it can freely track and monitor all movements. Yes, there are movements in public. Mr. Cruz was out in the public. He was outside his house. Yes, that's true. But at some point, privacy is linked to autonomy. And is able to just monitor our movements. Do you recall the number of days that the tracker was attached to the car in Jones? I don't. I don't. I think it was a good while. And that seems different because there, I think part of what concerned the court was that if you track somebody's locations over a period of time, then you can get a story about their life. And that's the kind of invasion of a privacy that somebody doesn't reasonably expect would occur. But here where it's targeted at a particular point in time, at a particular place where there's a sense that there's a lot of offenses occurring, that seems different from what was issued in Jones. Yeah. And I go back to the Carpenter case, the Carpenter decision where I think Justice Roberts said that we're entering an age of near perfect surveillance where technology is allowing the government to almost get to perfect surveillance, even inside the home, but outside the home completely. And I think courts have to set some barriers, some boundaries, some limitations. I do see I'm approaching my time limit here. I do thank all of you. And I mean, this is picking up on the two judges question about Jones and Carpenter and footnote three, the court says it's sufficient for our purposes today to hold that accessing seven days of cell site location information constitutes a fourth amendment search. And that really dovetails with the logic of the opinion, which talks about the entirety of a person's physical movements. Whereas if this is, you know, just one place, you know, it's a little bit like the distinction between a one video surveillance camera on the side of, you know, a Best Buy store. And then the police want to look at that when they're investigating a robbery of the store versus in the four circuit case where they had helicopter surveillance 24 seven, they could see everybody's movement over a long period of time. And that's just a four circuit case. It's not binding on us. It's not the Supreme Court. But it's, I think, trying to pick up on a distinction that one reading of Carpenter supports, which is that when it tips over into this kind of long-term day-to-day life surveillance, both Jones and Carpenter say that at least is a search. And we don't really know short of that. And I wonder if you have any for us and, you know, why is this not more like a camera on the side of the Best Buy than it is? Well, the government had access to surveillance cameras, hundreds. And so this went way beyond that. Doesn't that undermine your client's reasonable expectation of privacy? Well, I think when a person has a cell phone on him, he doesn't surrender all of his privacy just because he happens to possess a cell phone and go around the world. It's almost a ubiquitous. As to the item that was being determined, which is where they had a particular place, isn't it the same privacy interest that's implicated by a video camera? I would argue it's not. I would argue it's not because video surveillance cameras, of course, are everywhere. But cell phone is such an identifying tracking mechanism that it really is a workaround for the government to do its real work. Of course, the government has many ways to accomplish the same exact attempts to identify every person, many, many different ways. And of course, they've used these ways in January 6th investigations. So just for an implication of your position, if there's a robbery at a Best Buy and there's a surveillance camera, but it turns out the surveillance camera was defunct and it was at 2 in the morning and the police asked Google or AT&T, just from 1.30 in the morning to 2.30 in the morning, can you tell us who was in that location? Is that a general warrant under your theory? Is that impermissible? I actually think that's similar to the Carpenter facts and the facts of the Smith case, which recently came down from, I think, the Fifth Circuit. That's similar. So I think courts have, well, Smith was struck down, that warrant was struck down. Yeah, that would be closer to particularity and specificity, much closer than this warrant, which by any definition. Why is that? It seems quite similar except for the number of people. The government often cites the Zurcher case versus Stanford Daily, similar. So investigators in those cases are looking for specific crimes. They're looking for specific suspects that those crimes, not just a blanket calendar or a menu of possible crimes, and to find every single person who was at a protest. And of course, I would argue there's not even a First Amendment aspect to this case where these people were at a political riot, a political rally, a political protest demonstration. So this is very terrifying when you think about the implications if this were to be upheld. And I thank you so much. My colleagues don't have additional questions at this time. I'll give you a little time for rebuttal. Thank you. Thank you. Mr. Lieberman. Good morning. May it please the court. Dave Lieberman for the United States with me at table is Assistant United States Attorney Andrew Tessman. I'll pick up where Mr. Roots left off with his predictable site, my citation of the Zurcher case, which says that search warrants are directed at places, not persons. That then dovetails with the two Fourth Amendment requirements, probable cause in particular. Both of them are amply satisfied in this case. I'll take them each in turn. The court's questions have, I think, correctly internalized our view on probable cause. The warrant affidavits articulated ample probable cause that a number of crimes were being committed in the confines of the Capitol building on the afternoon of January 6th and a fair probability that the targets of the warrant, Google and AT&T would contain evidence, would have held evidence records of those crimes. That's probable cause. Do not need to name or identify individual suspects. That's the Zurcher case. The probable cause here also does not have anything to do with the Ibarra case. Judge Pillard's question focused on the distinction that we understand Ibarra to reach. Ibarra is about searches, pat-downs of individuals. A search warrant to search a place does not authorize pat-downs of anybody, everybody in the place absent individualized suspicion. That's not about the facts here because there was no pat-down. We were searching for records. Particularity. Both of these warrants identified in detail the places to be searched, the premises of AT&T and Google, and the precise records that the government was authorized to seize. That meets the particularity requirement. That explains why this is not like the Wilkes warrant that Mr. Roots cited. That warrant cited offenses and effectively gave law enforcement individuals to search whomever they want and seize whatever we want. We view these warrants as effectively using subpoena-like procedures, and that goes to an exchange that Mr. Roots was having with Judge Pillard. Subpoenas are issued every day around this country in litigation, and they are often directed at record custodians or companies with large databases and said, please provide us with responsive information. The target is going to have us to search a large data set often to identify responsive records, but no court that I'm aware of, at least not until the Smith case, has ever questioned the constitutionality of that subpoena-like procedures under the Fourth Amendment. And I think the reason goes to, remember this court referenced Carpenter, page 313 of Carpenter. Carpenter, searching Carpenter occurred when the government accessed the information. Why not when Google searched through its information as the agent, effectively as the agent of the government? So we disagree that any target of a subpoena, or in this case a search warrant using target-like subpoenas, is treated as an agent of whoever is issuing the subpoena. I found no case law supporting that proposition. And I think Carpenter tells us, because the search in Carpenter would have been roughly analogous to the search at issue here, service providers searching large databases to come up with responsive information. And the Supreme Court says at page 313, the relevant Fourth Amendment search there occurs when the government accesses the information. The internal searching by the target of a subpoena, in this case Google and AT&T, occurs before it delivers a much smaller data set to the government. So everything that happens before that time point, in our view, it's not a Fourth Amendment search and by definition cannot be a general rummaging under the Fourth Amendment. If we don't reach the third-party doctrine because of the complexities about the voluntariness or not of activating, for example, in the Google context location history tracking, is there any relevance or reason to reach reasonable expectation of privacy? The government would be fine if the court wants to just assume that Mr. Cruz had reasonable expectation of privacy and then resolve this case by saying there was probable cause and there was particularity. If the court wants to bypass some of the litigation that's now pending in the Fourth and Fifth Circuits. I guess the challenge to me is it seems obvious that he had no reasonable expectation of privacy in his presence during the time the warrant specifies in the capital, at a time when it's public and there's no claim that he's authorized to be there. But one implication of that would be that no warrant at all is required. Just go ask Google for the information. But there's some difficulty there because the government doesn't have a reason to think he had reasonable expectation of privacy in other records of his movement. And it's the warrant in this case that brings to the surface the narrowness and the discipline on the request. I guess the government's position would be, well, if he really didn't have a reasonable expectation of privacy in where he was, the government without a warrant can just ask Google, can you tell us who's there during these parameters? And we don't want to know people who we have reasons to think we're not, we don't have probable cause to think we're involved in any offense, like people who are authorized to be there, so we're going to do this multi-stage back and forth, but without a warrant. And that would be the implication if there's no expectation of privacy in the location. That's correct. And that is one of the arguments that we have raised in one of the three bases with the district court address below, no reasonable expectation of privacy, therefore there was no search and no warrant needed. And we've pressed that here. We think we have persuasive arguments given the short-term nature of the monitoring. This court said in Brennan, short-term monitoring of a person's movement in public places accords with expectations of privacy that our society has long recognized as reasonable. There was reference to the Fifth Circus contrary decision in Smith. We think Smith got it wrong, but even under the Smith framework, assuming that it's correct, which asks was there a potential that the disclosure of this fact would reveal some intimate window into the individual's life, that even if that's the framework, which we disagree with, that doesn't help Mr. Cruz here for some of the reasons that were discussed with Mr. Roots. It's the Capitol building. It was secured on that day. It's secured all every day. Visitors, this is the court, this court's decision in Nassif. Visitors have to go through security screening. They have to supply a reason to be there. I read Smith differently. I actually think Smith goes much further because it says the results of the GFN's warrant may be narrowly tailored. It doesn't adhere to what you pointed out in Carpenter, that the relevant search is when the government accesses the information. In Smith, they basically are saying it's the search within the location history that is not sufficiently tailored. It's unclear to me how you could even use a GFN's warrant at all. That's why I think Smith says GFN's warrants were categorically impermissible. I think if they were sitting where we are today, they would say the same thing about this one. I think that that's right. I think they would apply the good faith exception for the reasons that they said in Smith. But I think your honor was reading from the particularity analysis in the Fifth Circuit's decision about why the search there was akin to general rummaging. I would like to respond to that with at least three doctrinal points. Number one, the idea that Google is searching the many accounts, 500, I think it was 500 million, location histories, that was what the Fifth Circuit said was the problem. And I don't think that can be squared with, again, page 313 of Carpenter, which has the relevant Fourth Amendment search when we're talking with large data providers like this, is when the government receives the information. So the Fifth Circuit started its particularity analysis too soon. The second point is the subpoena point that I made earlier, and Judge Contreras fleshed this out in his Ryan opinion, is that if the Fifth Circuit's analysis in Smith is correct in particularity, then subpoenas, common subpoenas issued to record custodians that have large records themselves are going to present Fourth Amendment problems. And again, I was not aware of any court or any appellate authority saying that's a Fourth Amendment problem until Smith. The third point that I wanted, doctrinal point that I wanted to reference is that when we obtained the step one data from Google, after it had done those initial search and come up with a much smaller list, it was anonymized. And I think that's relevant under this court's decision in Brennan. If the government is just getting anonymized data that can't be tracked back to individual subscribers, that doesn't impair Fourth Amendment privacy interests, at least not until the point that we connect the anonymized data to subscribers. And so that's another reason why I think the Fifth Circuit Smith analysis in Smith is unpersuasive. I just wanted to make sure that I asked you the same question that I asked Mr. Roots, which is, was this issue preserved? I just wasn't able to see it. We viewed it as preserved. So what happened below is we had the suppression hearing an hour before trial was supposed to start. The district court denied suppression. And then we proceeded with agreement to effectively stipulate a bench trial. And then the district court found Mr. Cruz guilty of the two misdemeanors. And so if in a case where a defendant goes to trial, he hasn't waived anything, he can still raise... Except that he stipulates to the fact that he was present within the capital. And that is the fact that's at issue on the geofence warrant. So to me, he preserves other bases of appeal, and the judge so said. But it struck me that there was nothing with respect to that stipulation, which to me seems to obviate the issue that we have before us. Yeah, we understand the issue to be preserved. Mr. Roots will clarify if I'm correct. I think before the district court suppression hearing, there was no dispute that Mr. Cruz had entered the Capitol building. He was simply saying that the government discovered him by virtue of an invalid Fourth Amendment warrant. And that would then lead to suppression of our evidence identifying him in the Capitol. So we understand that to be preserved. Just a couple more points, two more, I'll call them more prudential points on Smith, because again, on the particularity analysis. Again, the Fifth Circuit found problematic that Google was searching in that initial query. We don't even think it was a just on the fortuity of how Google stored its records. You can easily imagine a service provider storing its data in a more compartmentalized fashion, such that that initial query would be a lot smaller. The only reason that the Fifth Circuit had that 500 million numbers, because that's how Google organized its data. Can I ask you a fact pattern? I'm sorry. Yes. Did I interrupt? Oh, just a fact pattern. If there's a crime that occurs at a particular point in time, at a particular place, let's say 2 a.m. at a store. And the government, they know that someone did it. They even have security camera footage that shows that the person who did it. But they don't know who they are. They don't know anything about them at all. And what they can do is they know that there's 100 people that were in the vicinity of that location in a time window of a half hour. And so they just want to figure out who are those 100 people. And then we can start looking at those 100 people. And then we can try to run in the field to figure out who that one person was. And if they say, OK, well, one way we can figure out who those 100 people are is we can engage in a—we can have a geofence, basically, that figures that out. How do you walk through that analysis? So is that—that's perfectly permissible to narrow the field to the 100. And then you have to know who they are because it can't be anonymized because you have to be able to investigate those 100 people individually. Yeah. So I think if in those 100 people in that space, my argument to this court would be we have probable cause for the reasons that you articulated. And we have particularity because we—definite in terms of the warrant as to what's being searched. And we have an alignment between probable cause and the breadth of the warrant because I would argue that those 100 people in that small space fall into one of two categories. Number one, either the likely perpetrator of the crimes or number two, recipient witnesses. And recipient witnesses are evidence just like records are evidence. And so we can use a search warrant to try to find them as well. But let's suppose that they can't be witnesses because there's—there's no reason to think people that just happen to be passing by a particular place and they just walk through. It's like the Las Vegas Strip. You're not actually stopping and observing anything. So it's really about figuring out who that one person is. Yeah. So I think some of it would depend on when in this particular category, the types of narrowing efforts that the government specified in the warrant that it would do, particularly before it got these individual subscriber data. But in that small enough data set, I think I would still happily defend that as supported by probable cause and particularity. Just to close up a button down the point that I was making as to the Google records being so large, that's because that's the way Google stores its information. The different service provider different—did it differently. Smith suggested it would have come out differently if that initial query is much smaller. The Supreme Court in Smith said that First—Fourth Amendment protections are not supposed to turn upon sort of these internal record-keeping practices. And so I don't think that that's a viable basis on which the Fifth Circuit pegged its particularity analysis, the manner in how Google stored its records. What if it's a neighborhood meeting in someone's home and there are, you know, 40 people in attendance and five family members in the house and some valuable gets stolen? Can the government—let's say it's a religious or political meeting—can the government you get the—use a due offense warrant and get the identities of all those people? I'm just going to—I don't know that we would have the tech—the technology is that granular, but I'm going to assume for the sake of the question that it is. I think the answer is yes, if it is sufficiently particular, if it—if based on the probable cause showing and the types of safeguards and narrowing that is put into the warrant like there was here to actually try to to reduce the amount of subscriber information that the government ultimately accesses, then yes, I would defend—I would defend that warrant with particular—if it was sufficiently tailored. But I don't know that—I think this is a much more straightforward case given both the size of the probable cause. In many respects, the sweep of the warrant is perfect to the some of the court's questions to Mr. Roots previewed. We think that everybody in the Capitol building whose location identify—information was identified, we had probable cause to believe that they were committing crimes on the afternoon of January 6th. The worst case scenario is maybe they were a percipient witness. Some of them may have been identified too, but that's a fair basis for which for the government to seek evidence. I think our citation to Lidster proves that point. So, I've had—obviously, there's good faith in the other Fourth Amendment carpenter questions. I'm happy to rest my briefs unless members of the court have any additional questions. Thank you. Government asks that the court affirm. Thank you, counsel. Mr. Roots, we'll give you two minutes for a rebuttal. Thank you so much. Just a couple points that were just brought up. The government brings up this distinction between subpoenas and warrants. This issue I've seen in Fourth Amendment case law. It has come up from time to time. I guess my understanding is the government is arguing, hey, we could have used a subpoena and this would have been just fine. We could have subpoenaed Google. We could have subpoenaed this same information. I guess that's their argument. But they used a search warrant, which is a criminal order in a criminal matter. And by using a search warrant, they are bound by the constrictions of the Fourth Amendment. Of course, a subpoena might take months, six months. We all know they can take months. Here is the power of law enforcement with the full punch of a search warrant to get this information. And I just don't think that that's a good way to look at this. It's possible they could have got the same information from a subpoena, but they use a search warrant and the Fourth Amendment very carefully limits search warrants. The question of whether it was preserved with the stipulations that we had down below. I'm satisfied it is. You and the government both agree. Okay. And this sort of ties in with something the chief judge asked, which was about a question, maybe a hypothetical, about a crime where there were 100 people around the criminal. Could law enforcement ask and go and use regular shoe leather? Of course, they can. And that's very similar to the facts of the John Wilkes case in 1762, where the king's ministers issued a warrant saying, go find whoever wrote this pamphlet. And they knocked on the door of 40 different printers, and everyone, they used shoe leather saying, did you write this pamphlet? Did you publish this pamphlet? Did your print shop publish this? Do you know who did? Until they eliminated every print shop in London and finally found the printer. That was held to be so outrageous. And that was with a warrant in history that it led the founding fathers, the framers of the Constitution, to explicitly limit and eliminate that. And I would just finish up by pointing to some of the cases we pointed out in the brief about these cases where the police will go, and if they have probable cause to search for a crime in one apartment of an apartment complex, a warrant would be overbrought, and a general warrant to search the entire apartment complex. I also direct the court to the diary decision, U.S. Supreme Court, where they had probable cause to search a car with three people, and they were looking for people who were violating, I guess, lottery ration tickets or something. But they held that out of the three, one was completely innocent. So even in that case, the U.S. Supreme Court said, no, you can't search three guys to get to one criminal. And here in the January 6th context, they searched a thousand cell phones, and they didn't even have probable cause until they went and knocked on the door of each individual and asked him so that they could obtain probable cause to accuse him of a crime. Thank you so much. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan; Henderson; Pillard